IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EULAH B. BAILEY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05-0294-CV-W-HFS |
| JOHN E. POTTER, Postmaster General, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Pro se plaintiff, Eulah B. Bailey, has filed a motion for summary judgment based on her amended complaint alleging race discrimination; harassment; retaliation; slander; defamation of character; and put off the clock without pay.[1] Plaintiff's claims are brought pursuant to 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[2] Defendant, John E. Potter, Postmaster General "the agency" has also filed a motion for summary judgment seeking dismissal of plaintiff's claims.

---

[1] In her initial complaint, plaintiff alleged claims of discharge from employment; harassment; race discrimination; and retaliation.

[2] Plaintiff's claims are raised against her employer, the United States Postal Service's Computerized Forwarding Systems Unit "CFS", located in Kansas City, Missouri (collectively referred to as "the agency".

## Background Facts

Plaintiff began employment with the agency on March 2, 1985. On May 22, 2001[3], she filed a complaint with Equal Employment Opportunity Office of the Postal Service "EEOC," Western Area Office. (Ex. 1, Final Agency Decision; pg. 1 "FAD").[4] The case number for this complaint was 41-640-0068-01. In her complaint, plaintiff claimed discrimination based on race, African-American; national origin, not cited; disability discrimination based on seizure disorders, epilepsy, migraine headaches, and ocular disease; age, born 2/15/49; and that she was retaliated against because of prior EEO activity. Specifically, plaintiff complained that:

1. On March 21, 2001, she was not excused from her sixth day of work:

2. On March 28, 2001, plaintiff's supervisor, Melody Campbell, charged plaintiff with unscheduled sick leave, plaintiff became confrontational with her, and she instructed plaintiff to leave the building, and issued her a letter of warning;

3. On April 13, 2001, she was denied annual leave;

---

[3] Upon receipt of the complaint, an investigation was conducted and upon completion, plaintiff requested a hearing. (Ex. 1,Final Agency Decision; pg.2). On October 21, 2002, plaintiff withdrew this request and opted for a final agency decision. (Id). On October 22, 2002, plaintiff appealed to the Office of Federal Operations "OFO;" the case was ultimately dismissed due to premature filing. (Id).

[4] The exhibits as noted in this opinion are attached to defendant's motion for summary judgment.

  4. On April 14, 2001, she was instructed to clock out when she asked to see a union steward;

  5. On April 23, 2001, supervisor Campbell intentionally withheld medical information;

  6. On August 8, 2001, she was removed from the Postal Service.[5] (Ex. 1, FAD; pg. 1).

The agency began its analysis of plaintiff's complaints of race, national origin, age discrimination utilizing the factors set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). As to plaintiff's claims of race and age discrimination, the agency found that plaintiff failed to satisfy the third prong of the McDonnell Douglas paradigm. (Id; pg. 2-5). Specifically, that plaintiff failed to show that she was treated less favorably than similarly situated employees. The agency also found that the claim of disability discrimination failed because nothing in the record supported plaintiff's claims of epilepsy and migraine headaches. Therefore, the agency found that plaintiff did not establish a disability as defined by the Rehabilitation Act of 1973, and therefore, failed to establish a prima facie case of disability discrimination. (Id; pg. 5-7). Finally, the agency determined that although plaintiff engaged in protected EEO activity, the named managers had no knowledge of such activity, and therefore, the exercise of her civil rights was unknown to the managers named as retaliating against plaintiff and her claim for retaliation failed. (Id; pg. 7-8).

---

[5]A case chronology indicates that plaintiff requested counseling on March 30, 2001, and was given a Notice of Right to File on May 14, 2001. (Ex. 1; pg. 2). Plaintiff filed the formal complaint on May 22, 2001, an investigation was completed and plaintiff was advised to choose either a hearing before an EEOC Administrative Judge or a final agency decision without a hearing. (Id). Ultimately, plaintiff requested a final agency decision; however, on October 22, 2002, plaintiff appealed to the Office of Federal Operations "OFO." OFO dismissed the case due to premature filing of appeal; the agency then issued its final decision. (Id).

After reviewing various issues raised by plaintiff and the reasons offered by her supervisors, the agency noted that even if a prima facie case of race and age discrimination was established, plaintiff failed to show that the proffered reasons were pretextual. (Id; pg. 8-11).[6] On December 21, 2004, after a review of the entire record, the agency closed the case with a finding of no discrimination based on race, national origin, age, disability, and retaliation. (Id; pg. 11).

Subsequent to the FAD, plaintiff filed a formal complaint against the agency with the U.S. Equal Employment Opportunity Commission "EEOC." The case number assigned to this complaint was 4E-640-0061-04. On July 8, 2005, the agency filed a Motion for a Decision without a Hearing regarding plaintiff's complaints alleging race discrimination, and retaliation for prior EEO activity. (Ex. 7). The issues accepted for investigation included:

1. An LOW was issued to plaintiff on May 25, 2004, for unacceptable conduct displayed on April 29, 2004;[7]

---

[6] In fact, the agency noted that a review of the record indicated that plaintiff offered nothing more than rank speculation and conclusory allegations as to the actions taken by her supervisors. (Ex. 1; FAD, pg. 10). Additionally, plaintiff's self-serving, improbable speculation and conclusions would not support any finding that she has carried her burden. citing, Medina-Munoz v. R.J. Reynolds, 896 F.2d 5 (1st Cir. 19990). (Id). Although plaintiff stated that she was being singled out because of her status in protected group, the evidence of record did not support such a conclusion. (Id).

[7] These dates appear to be in error, for, as revealed in the pleading, after clocking in on May 6, 2004, rather than immediately proceed to her work station, plaintiff went to her locker to retrieve her glasses without obtaining supervisory approval.(Motion for Decision Without a Hearing: Ex. 7; ¶ 23). Supervisor Benson reminded plaintiff of the agency policy prohibiting this, and plaintiff became "loud, angry, and confrontational...." (Id; ¶¶ 24-26). After an investigative interview with plaintiff, on May 6th, manager Wescott concluded that plaintiff's conduct was unacceptable, and on May 25, 2004, a Letter of Warning was issued. (Id; ¶ 27).

4

2. The denial of plaintiff's sick leave request dated June 11, 2004, for a doctor's appointment scheduled on July 9, 2004;

At plaintiff's request, her complaint was amended to include:

3. The placement of plaintiff in an emergency off-duty status without pay effective March 10, 2005, due to unacceptable conduct;

4. A Notice of Removal received by plaintiff on or about April 8, 2005, to be effective May 16, 2005, charging unacceptable conduct. (Ex. 7; pg. 1-2).

However, since plaintiff entered into a Grievance Settlement Agreement dated May 23, 2005, which resolved "any and all matters pertaining to the emergency placement and Notice of Removal," the agency maintained that plaintiff no longer had a valid claim under complaints 3 and 4.

The Administrative Judge "AL" noted that plaintiff timely initiated EEO counseling on April 30, 2004, and timely filed a formal complaint of discrimination against the agency. (Id; pg. 1). Plaintiff alleged race discrimination and retaliation based on the following incidents:

1. On April 13, 2004, manager, Terry Wescott, asked plaintiff why she could not take her medication during her break;

2. On May 6, 2004, plaintiff was accused of calling her supervisor a racist and threatened a witness;

3. On May 25, 2004, plaintiff was issued a Letter of Warning for unacceptable conduct displayed on May 6, 2004;

4. On July 9, 2004, manager Westcott told plaintiff that while he was unaware that plaintiff's medication made her sleepy, Westcott would discipline plaintiff if plaintiff was caught sleeping again;

5. On July 9, 2004, plaintiff refused to sign a paper requested by manager Westcott, and supervisor Benson told plaintiff to leave her office;

6. On July 7, 2004, supervisor Benson told plaintiff to return to her workstation when plaintiff was observed talking to a co-worker;

7. On July 3, 2004, plaintiff was not given the printout she requested after supervisor Benson told plaintiff that it took her 1 hour to key 14 items;

8. On April 29, 2004, plaintiff was denied accommodation when supervisor Benson told plaintiff she needed to go home if she could not key the machine;

6

9. In May of 2003, a Labor Relations employee told plaintiff she was missing information on the paperwork submitted to them;

10. On or about July 8, 2004, plaintiff's request for scheduled sick leave for July 9, 2004, was denied. (Ex. 6; pg. 1-2).

The AL reviewed the agency's argument, based on a Report of Investigation "ROI"), that claims 1,2,4,5,6,7 and 8 should be dismissed because plaintiff was not "aggrieved;" and that claim 9 should be dismissed for untimely EEO contact. (Ex. 6; pg. 2). The AL agreed with the agency's argument, and determined that only claims 3 and 10 would be the sole issues to be resolved. (Id). Specifically, plaintiff's complaint that: (1) on May 25, 2004, she was issued an LOW for unacceptable conduct occurring on May 6, 2004; and (2) on or about July 8, 2004, her request for sick leave dated June 11, 2004, for a doctor's appointment scheduled for July 9, 2004, was denied for services needed. (Id; pg.1).[8] The AL determined that there were no genuine issues of material fact in dispute, thus, a decision without a hearing, also known as a motion for summary judgment, would be appropriate. (Id; pg. 3-4). The statement of undisputed facts set forth in the

---

[8] Plaintiff subsequently sought leave to amend her complaint to include that: (1) on March 10, 2005, she was placed in an emergency off-duty status without pay for unacceptable conduct; and (2) on April 8, 2005, she received a Notice of Removal effective May 16, 2005, for unacceptable conduct. (Ex. 7; pg. 1-2). The agency objected to the inclusion of these issues, and argued that on May 23, 2005, plaintiff entered into a Grievance Settlement Agreement which resolved these issues. (Id; pg. 2). After reviewing the record, the AL denied plaintiff's request to amend finding that "she effectively withdrew any EEO claims regarding her suspension and removal as part of her grievance settlement." (Ex. 6; 2-3).

7

agency's Motion for a Decision without a Hearing were adopted by the AL as accurate background information. (Id; pg. 5).

Applying the factors utilized in McDonnell Douglas, the AL concluded that plaintiff was not discriminated against based on her race, and she was not retaliated against for her prior EEO activity. As to the LOW, the AL found plaintiff's prima facie case to be fatally flawed because plaintiff failed to present persuasive evidence that any similarly situated employees outside of her protected group status were treated more favorably. (Id; pg. 6). Although plaintiff disputed whether the persons compared by the agency were similarly situated to her, the AL found that she failed to name any comparable employees. (Id). Even if plaintiff successfully presented a prima facie case, the AL concluded that the agency articulated a legitimate, non-discriminatory reason for issuing the LOW, and plaintiff failed to show it was pretextual. (Id; pg. 6-7).

Regarding plaintiff's complaint of denied sick leave, the AL found that plaintiff failed to establish a prima facie case of discrimination. (Id; pg. 7). Moreover, even if a prima facie case was established, the agency articulated a legitimate, non-discriminatory reason, i.e. the needs of the work unit in accordance with established agency policy. (Id). Further, the evidence showed that other employees requesting leave during the July period were also denied. (Id; pg. 7-8). Finally, when plaintiff clarified that the leave she sought fell under the auspices of the Family Leave Medical Act "FMLA" the leave was granted; thus, plaintiff was not aggrieved. (Id; pg. 8).

The AL determined that plaintiff's claim of retaliation also failed because she failed to present any evidence that supervisor Benson or manager Westcott were aware of her prior EEO complaints. (Id). More importantly, the proximity in time between the protected activity and the issuance of the LOW and the denied sick leave was well beyond that which would raise an inference

8

of a retaliatory motive. Here, the protected activity occurred in 2000 and 2001, approximately 3 to 4 years before the complained of events. Again, even if plaintiff had established a prima facie case of retaliation, the AL found the agency's explanations to be legitimate, and plaintiff failed to rebut them.

Plaintiff appealed, and by a decision dated March 15, 2006, the EEOC reviewed the record in its entirety, including the prior cases and decisions, and concluded that the AL's decision without a hearing was appropriate and that a preponderance of the evidence did not establish that discrimination occurred. (Ex. 4; pg. 1). While noting that plaintiff did not appeal the procedural dismissals, the EEOC affirmed the dismissal of plaintiff's other claims on procedural grounds. (Id).

## Analysis

### A.  Summary Judgment Standard of Review

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. Davidson v. Tyco/Healthcare, Mallinckrodt, Inc., 416 F.Supp.2d 690 (E.D.Mo. 2005). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Davidson, at 693; quoting, Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

9

Summary judgment may be granted if all the information before the district court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Davidson, at 693. The initial burden is on the moving party, and after this burden is discharged, the nonmoving party must do more than show that there is some doubt as to the facts. Davidson, at 694. Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Id. The court must view the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically can be drawn from those facts. Id.

Although summary judgment should seldom be granted in employment discrimination cases, it is proper in those cases where the plaintiff fails to establish a factual dispute on an essential element of the case. Id. For, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Id.

Because plaintiff offers no direct evidence of discrimination, the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), will be utilized; see also, Marquez v. Bridgestone/Firestone, Inc., 353 F.3d 1037, 1038 (8th Cir. 2004). Under this framework plaintiff has the burden of establishing a prima facie case of discrimination. Marquez, at 1038. Once a prima facie case is established, the burden shifts to the agency to produce a legitimate, nondiscriminatory reason for the adverse employment action. Id. If the agency is able to articulate such a reason for the adverse employment action, the burden shifts back to plaintiff to show that the agency's proffered reason is merely pretext for race discrimination. Id.

10

**B.     Race Discrimination**

To establish a prima facie case of race discrimination based upon disparate treatment, plaintiff was required to prove that: (1) she is a member of a protected class; (2) qualified for the position she held; (3) suffered an adverse employment action; and (4) sufficiently raised an inference of unlawful discrimination. Cherry v. Ritenour School District, 361 F.3d 474, 478 (8th Cir. 2004).

In her motion for summary judgment plaintiff complains about her termination as it relates to a Last Chance Agreement that she refused to sign because she claims it contained additional charges not previously presented. Plaintiff simply contends that (1) there were instances of perjury not addressed by the agency or the Commission; (2) neither the termination nor the appeal were handled fairly; and (3) the agency's representatives were not credible. Finally, plaintiff contends that upon her return to work she was harassed unnecessarily. However, other than giving her opinion regarding these allegations, plaintiff fails to offer any evidence that would tend to support her claims. Marquez, 353 F.3d at 1038; citing, Putnam v. Unity Health Sys., 348 F.3d 732, 733-34 (8th Cir. 2003) (the plaintiff must substantiate her allegations with more than "speculation, conjecture, or fantasy" in order to survive summary judgment) (citation and internal marks omitted). Plaintiff fails to demonstrate the existence of a genuine issue as to a material fact, and other than these conclusory allegations, plaintiff makes no showing which would entitle her to judgment as a matter of law. Consequently, even after giving her pleading a liberal reading, plaintiff's motion for summary judgment must be denied.

Defendant has also filed a motion for summary judgment regarding plaintiff's claims asserted in her initial complaint. These include plaintiff's claim that she was terminated on August 8, 2001, due to race discrimination, and that she was subjected to harassment and retaliation. Defendant's

11

motion also responds to plaintiff's complaints alleged in her amended complaint in which she alleges that between May and July of 2005, she experienced further racial discrimination; retaliation; harassment; slander; defamation; and was put off the clock.

The tenor of plaintiff's response appears to be an attempt to show that similarly situated employees were treated more favorably. The test to determine whether employees are similarly situated to warrant a comparison to a plaintiff is a rigorous one. E.E.O.C v. Kohler Co., 335 F.3d 766, 775 (8th Cir. 2003). While claims of disparate treatment can support a claim of pretext, the plaintiff has the burden of proving that she and the disparately treated employees were similarly situated in all relevant respects. Kohler, at 775-76. Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. To be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of "comparable seriousness." Kohler, at 776; quoting, McDonnell Douglas, 411 U.S. at 804. A plaintiff may prove allegations of disparate treatment by demonstrating that he was treated less favorably than similarly situated employees outside the plaintiff's protected class. Kohler, at 776. For discriminatory discipline claims, "[e]mployees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways." Id. The plaintiff has the burden of demonstrating that there were individuals similarly situated in all relevant aspects to her by a preponderance of the evidence. Id.

Case law permits a plaintiff to show that she was treated differently from similarly situated employees as an inference of race discrimination in satisfaction of the fourth prong of her prima facie case, see, Tolen v. Ashcroft, 377 F.3d 879 (8th Cir. 2004); see also, Marquez v.

12

Bridgestone/Firestone, Inc., 353 F.3d 1037 (8th Cir. 2004), or in demonstrating pretext. see, Cherry v. Ritenour School District, 361 F.3d 474 (8th Cir. 2004).

In this regard plaintiff notes that fellow-employee Alan Steinlage (white, male) was given a temporary accommodation; while plaintiff's request for accommodation was denied, and later dismissed in subsequent hearings. (Response to Summary Judgment: pg. 4). Plaintiff states that even though she complained, the issue was rejected by the agency for investigation, the AL, and the EEOC. (Id: pg. 12). According to plaintiff, she requested a temporary accommodation on April 29, 2004, instead, when she arrived for work on May 1, 2004, she received a LOW, and was told to clock out. (Id: pg. 13). Plaintiff claims that conversely, on July 1, 2004, Mr. Steinlage sought, and received a temporary accommodation because he hurt his finger. (Id: pg. 14). The record is not entirely clear, but it appears that when plaintiff arrived at work on April 29, 2004, supervisor Benson told plaintiff she should go home if she was unable to key on the machine. (EEOC Decision: Ex. 6; ¶8). Plaintiff states that when she arrived at work on May 1, 2004, she had documentation for April 30, 2004, - presumably she did not appear for work on the 30th - but was told to leave until she had her prescription glasses. (Response to Summary Judgment: pg. 13).

The agency counters that since this complaint was not alleged with any specificity in either plaintiff's complaint or the amended complaint, it cannot be raised in opposition to summary judgment. In any event, a review of the FAD dated December 21, 2004, shows that while plaintiff in fact complained of being treated differently than, among others, Alan Steinlage, she failed to identify the comparative race, and whether he worked for the same supervisor. (Ex. 1; pg. 4-5). Thus, the agency determined that plaintiff failed to satisfy the third prong regarding similarly situated employees, resulting in a failure to establish a prima facie case. (Id; pg. 5).

13

Plaintiff subsequently filed additional claims and complained that while she received a LOW, Steinlage did not. (Motion for Decision Without a Hearing: Ex. 7; pg. 12). The agency subsequently found that although Steinlage and plaintiff were similarly situated as to their work in the same unit with the same supervisors, Steinlage's request for accommodation was different than the LOW issued to plaintiff for unacceptable conduct on May 6, 2004, i.e. calling her supervisor a racist and threatening a witness. (Id; see also, EEOC Decision, Ex. 6; ¶ 2). As previously noted, plaintiff received an LOW on May 25, 2004, for her behavior on May 6, 2004, when she was reminded that she must immediately proceed to her workstation after clocking in. The agency noted that if Steinlage left his position after clocking in, and did not receive similar discipline, then he would be a valid comparator. (Id).

Further, the agency noted that plaintiff's present attempt to compare the denial of her request for temporary accommodation and direction to leave the premises, with that of the Steinlage request was "beyond the scope of her immediate claims," and, therefore, not accepted for investigation. (Id).

Plaintiff next complains about the denial of her request for a sick day to keep a doctor's appointment, and compares it to the request made by fellow employee, Annette Kathryn Ramsey (white, female). (Response to Summary Judgment: pg. 15-16). There is no dispute that the two are similarly situated as to working in the same unit with the same supervisor. However, inasmuch as plaintiff's request was ultimately granted after some misunderstanding about the request pursuant to the Family Medical Leave Act, plaintiff was not aggrieved. (Id: 18).

Plaintiff finds fault with fellow employees deemed by the agency to be comparative to her, and seeks to compare herself to others, but plaintiff's example of comparison is not persuasive. For instance, plaintiff claims that she should be compared to employee Kevan Loy (white, male).

14

According to plaintiff, Loy was given a discussion on 2 occasions for displaying a temper and derogatory reactions; yet, he was not placed in an emergency off-duty status and did not receive progressive discipline. (Response to Summary Judgment: pg. 23-24). After being loud and physically shaking on a third occasion, Loy received a LOW, but was not subjected to removal. (Id: pg. 24).

It is undisputed that Loy works in the same unit and is supervised by the same personnel as plaintiff. Thus, due to his race, he fits the definition of a similarly situated employee outside the protected class. However, as conceded by plaintiff, Loy has been subjected to disciplinary proceedings. The agency also states that Loy has been disciplined for unacceptable conduct. (Ex. 7; ¶¶ 17-18). Consequently, because both Loy as well as plaintiff have been disciplined for unacceptable conduct, plaintiff fails to prove the third prong.

To the extent plaintiff argues that the third prong is satisfied because she was treated more harshly than Loy, without more, this argument is not persuasive. In order to show a disparity in their respective punishments plaintiff would have to show that they engaged in the same conduct without any mitigating or distinguishing circumstances. Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004). The record here evidences that by displaying a temper and failing to follow company policies numerous times, plaintiff has quite appropriately been disciplined in excess of the three occasions of punishment received by Loy.

Under the evidence presented here, in failing to show that she was treated differently than similarly situated employees, plaintiff fails to satisfy the fourth prong of her prima facie. Even if she successfully made a prima facie case by showing an inference of discrimination in some other fashion, her claim fails. For, once the agency met its burden of production by articulating legitimate

15

reasons for the disciplined meted out to plaintiff, plaintiff failed to show that the articulated reason was pretext.

C.      **Retaliation**

To establish a prima facie case of retaliation, the plaintiff must show that she engaged in protected conduct; suffered an adverse employment action; and the adverse action was causally linked to the protected conduct. Grey v. City of Oak Grove, Mo., 396 F.3d 1031, 1034-35 (8th Cir. 2005); see also, E.E.O.C. , 335 F.3d at, 772 (8th Cir. 2003). It is not quite clear which actions plaintiff claims were taken against her in retaliation for the filing of EEO claims. For arguments sake, therefore, the most harsh actions will be considered. On March 10, 2005, plaintiff was placed on Emergency Off-Duty status. On April 8, 2005, plaintiff was issued a Notice of Removal to be effective May 16, 2005.

Assuming, for purposes of analysis that plaintiff established a prima facie case.[9] Nevertheless, the agency stated legitimate, non-discriminatory reasons for these actions. The April

---

[9]The agency contends that plaintiff cannot show that she suffered an adverse employment action because she was ultimately reinstated. However, in order to eliminate the adversity taint the employee is required to be reinstated "without any loss of pay or rank." Tatum v. City of Berkeley, 408 F.3d 543 (8th Cir. 2005). Here, the settlement agreement reached between the parties expressly stated that "there will be no back pay or benefits for the time off." (Ex. 7; Ex. I).

If this portion of the agreement is in error, and plaintiff was indeed compensated with back pay (as she states in her response at page 26), then the Tatum holding presides, and plaintiff is not aggrieved. In any event, plaintiff would not be entitled to punitive damages for discrimination in violation of Title VII. Bunda v. Potter, 369 F.Supp.2d 1039, 1049 (N.D.Iowa 2005) (it is clear that the Postal Service is a government agency for purposes of Title VII, and is therefore, exempt from punitive damages); citing, Baker v. Runyon, 114 F.3d 668, 671-72 (7th Cir. 1997).

8th removal notice explained that on March 10th, plaintiff, accompanied by a union steward, was called into a meeting with the manager. (Ex. 7; Ex. E). After becoming upset and refusing to answer questions, plaintiff was released back to work; she then confronted supervisor Benson with the threatening statement. (Id). This was corroborated in an affidavit by supervisor Benson in which she averred that the off-duty status resulted from plaintiff's threatening words to her , i.e. "I know you and Terry are in on it. I'm going to do what I have to do." (Ex. 7; Ex. B and D). Plaintiff had also been sent home a few days earlier for arguing with management. (Id). Further, the record is replete with instance after instance of plaintiff's outbursts and temper tantrums, and plaintiff fails to show that the agency's reasons are pretextual. Under these circumstances, she fails to demonstrate the existence of a genuine issue of material fact regarding the agency's disciplinary actions.

**D.**    **Harassment**

To establish a prima facie case of a hostile work environment, plaintiff was required to show: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on race; (4) that the harassment affected a term, condition, or privilege of her employment; and (5) that the agency knew or should have known of the harassment and failed to take proper remedial action. <u>Tatum v. City of Berkeley</u>, 408 F.3d 543, 550 (8th Cir. 2005).

Plaintiff contends that she has established a prima facie case of harassment based on her race or due to retaliation. (Response to Summary Judgment: pg. 22-23). In support of this contention, plaintiff appears to argue that an inference of discrimination can be gleaned from her direct

17

supervisor, Melody Campbell (black, female), and indirectly from supervisor, Kelly Adams (white, female). (Id). Presumably through the discipline meted out by these supervisors. However, contrary to plaintiff's contention, there is no evidence in the record which would tend to support a theory that plaintiff was disciplined for anything other than repeated infractions of company rules and policies.

After a careful review of the evidence presented, viewed in the light most favorable to plaintiff, it is concluded that plaintiff failed to present a legally sufficient evidentiary basis on which a jury could have found that she suffered harassment based on her race or that the alleged harassment affected a term, condition, or privilege of her employment. Tatum, at 550; see also, Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676 (10th Cir. 1998) (to avoid summary judgment, a plaintiff must do more than make vague and conclusory statements regarding alleged reports of harassment).

Because plaintiff appears pro se, and the agency is not prejudiced by the late submission of a sur-reply brief (without leave of court), I have considered the contents. However, plaintiff merely repeats circuitous arguments relating to issues that have been resolved in favor of the agency. To defeat a motion for summary judgment, the nonmoving party must set forth specific facts, by affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial. This, plaintiff has not done. Thus, defendant's motion for summary judgment will be granted.[10]

---

[10] As the named defendant in plaintiff's complaint, John E. Potter as Postmaster General is sued in his official capacity, which in all respects other than name, is to be treated as a suit against the entity - here, the United States. Buford v. Runyon, 160 F.3d 1199 (8th Cir. 1998). Thus, plaintiff's claims of slander and defamation are equally flawed. For, the United States, as a sovereign, is immune from suit unless it waives its immunity and consents to be sued. Buckles v. Indian Health Service/Belcourt Service, 310 F.Supp.2d 1060 (D.N.D. 2004). Under the Federal Tort Claims Act "FTCA," the United States waives sovereign immunity for tort claims against the United States, with some exceptions - one of the exceptions listed in the FTCA are any claims of slander and defamation. Buckles, at 1067.

18

Accordingly, it is hereby

ORDERED that plaintiff's motion for summary judgment (ECF doc. 34) is DENIED. It is further

ORDERED that defendant's motion for summary judgment (ECF doc. 35) is GRANTED. The clerk of the court is directed to enter judgment in favor of defendant. It is further

ORDERED that the clerk of the court mail a copy of this order by regular mail, and certified mail, return receipt to plaintiff at:

3230 Rowland

Kansas City, Ks. 66104-4147

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

March 21, 2007

Kansas City, Missouri